IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KIMBERLY J. FEENEY,

Plaintiff,

v.                                                      No. 14-1083-DRH

OLIN CORPORATION,

Defendant.

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

### Introduction and Background

Now before the Court is Olin Corporation's motion for summary judgment (Docs. 27, 28, & 29). Olin Corporation ("Olin") claims it is entitled to summary judgment as the undisputed facts show that Kimberly Feeney was laid off, not discharged, and the decision to lay her off was based on her inability to obtain a permanent position with Olin due to her work restrictions and her seniority as determined by the collective bargaining agreement. Obviously, Feeney opposes the motion arguing that there are questions of fact as to whether or not she was terminated by Olin, that Olin admitted that it violated the rules of the workers' compensation commission and questions of fact exist as to whether Olin was

permanently accommodating Feeney's restrictions (Docs. 30, 31, 32 & 33). Based on the applicable law, the record and the following, the Court GRANTS the motion for summary judgment.

On August 26, 2014, Kimberly J. Feeney filed a two-count complaint against Olin Brass and Winchester, Inc., in the Madison County, Illinois Circuit Court (Doc. 2-1). Specifically, Feeney claims that on May 19, 2010 she was injured when ammunition primers detonated while she was on the job at Olin Winchester and that the injuries she sustained rendered her unable to perform her employment for a period of time greater than a 1 year. (Doc. 2-1, ps. 1- 3). Feeney also alleges that as a result of her injury/disability and the medical bills she incurred she became entitled to and applied for certain benefits under the Illinois Workers' Compensation Act. Feeney contends that Olin retaliated against her by discharging her for exercising her right to file for workers compensation benefits in violation of the Illinois Workers' Compensation Act (Count I) and that Olin engaged in willful and wanton misconduct associated with that retaliatory discharge pursuant to 820 ILCS 305/4 (Count II). On October 4, 2014, Olin removed the case to this Court based on diversity jurisdiction, 28 U.S.C. § 1332 (Doc. 2).[1]

On October 30, 2015, Olin moved for summary judgment (Doc. 27) and Feeney filed her opposition on December 3, 2015 (Doc. 30). As the motion is ripe, the Court addresses the merits of the motion.

---

1 On December 5, 2014, the Court allowed Feeney to amend by interlineation Olin Corporation as the correct defendant (Doc. 13).

## Facts[2]

Olin is a manufacturer that produces, among other things, sporting ammunition, reloading components, small caliber military ammunition and components, and industrial cartridges under the Winchester brand.   Olin has a manufacturing and production facility in East Alton, Illinois.   The production workers at the facility are represented by the International Association of Machinists ("Union"), and their employment is governed by a collective bargaining agreement ("CBA") between the Union and Olin.

In August 2009, Olin hired Feeney as a centerfire cap operator at its East Alton, Illinois facility.   Feeney is a member of the Union and has been throughout her employment with Olin.   As a centerfire cap operator, Feeney worked in Olin's Primer Department and assembled an ammunition component called a primer, which is a part of a cartridge that contains explosive material and ignites the gunpowder in the cartridge when the cartridge is fired.   As a centerfire cap operator, Feeney worked a rotating three-shift schedule, which required her to rotate weeks working day shifts (8:00 am to 4:00 pm), afternoon shifts (4:00 pm to 12:00 am) and midnight shifts (12:00 am to 8:00 am).   Also, as a centerfire cap operator, Feeney regularly worked mandatory overtime, which was assigned based on employee seniority pursuant to the CBA.

The CBA has a two-tiered seniority system used to determine employee rights and obligations.   Employees are assigned a plant-wide seniority date based

---

2 These facts are either agreed or admitted by the parties.

on the date they are first hired into a bargaining unit position in East Alton. Employees are also assigned an occupational group seniority date based on the date in which they first begin working within an occupational group (which are roughly coextensive with departments).   When an employee permanently transfers from one occupational group to another by successfully bidding into a position in a new department, the employee's plant-wide seniority is unaffected, but the employee's occupational group seniority is started over in the new group.

When a permanent position becomes available in the East Alton facility, it is posted, interested employees bid on it, and the position is awarded pursuant to a five-step process:

1. The position is awarded to the most senior bidding employee who previously held the position.

2. If no qualified employees who previously held that position bid, the position is award to the bidding employee with the most occupational seniority within the open position's occupational group.

3. If no employees within the open position's occupational group bid, the position is awarded to the bidding employee with the most plant-wide seniority.

4. If no one bids, Olin will recall a qualified employee who is on layoff based on CBA guidelines.

5. If there are no qualified employees on layoff, Olin can make the position available to outside applicants.

Employees on layoff status do not have to wait for open positions to fall to them in step 4.   They are able to bid like active employees, and they will be awarded the bid if they are the most senior, as determined by Steps 1-3.

Olin is not able to transfer an employee's occupational group seniority from one occupational group to another.   Open positions are posted in multiple locations throughout the East Alton facility, and all active and laid-off employees are able to bid on any open positions within the bargaining unit.   In order to be awarded the position, the employee must be physically capable of performing the tasks at the time the bidding window expires.

On May 19, 2010, Feeney was injured at work in an explosion that occurred while she was sweeping up loose primers on the floor.   Olin completed the injury report necessary to begin processing her workers' compensation claim.   After the statutory waiting period, Feeney began receiving temporary total disability ("TTD") payments for the time after her injury when she could not work.   She continued to receive TTD payments until she was able to return to work.   As a result of her work-related injury, Feeney suffered physical and psychological injuries.   All of Feeney's physical injuries have healed (with the exception of some scarring), and no physical injury caused by the explosion currently impacts her ability to work.

Olin paid for all of Feeney's medical bills caused by the injury.   Olin paid Feeney all of the TTD benefits to which she was entitled.   Olin did not prevent Feeney from following her doctor's orders regarding her care and her work restrictions.   No one from Olin ever spoke negatively to Feeney regarding her

workers' compensation claim or discouraged her from filing a claim or pursuing her claim.

According to Olin's policy, a light-duty position is created for employees who are injured on the job and are released to work with restrictions that prevent them from performing the position they held before their injury. Because they are temporary, made-up positions, the Union permits injured employees to perform light-duty positions without bidding as required by the CBA.

A temporary job is a job that falls outside of the CBA. The phrase "layoff unavailable" is a term Olin uses in their system. It is not described in the CBA. It is used in a computer program purchased by Olin called "PeopleSoft" and is code that is used within that Human Resource software.

The CBA dictates that while an employee is working in a temporary light-duty position, the employee continues to accrue plant-wide seniority and occupational group seniority as if he or she were still working on his or her previous permanent position. For example, if an employee whose permanent position is in Primer is injured and assigned a light-duty position in Shotshell, the employee would continue to accrue occupational group seniority in Primer. While an employee is working in a temporary light-duty position, the employee continues to be paid wages as if he or she were still working in his or her previous permanent position. Light-duty positions are not created for employees who have restrictions that are not caused by a work-related injury. Employees in a temporary light-duty position may bid for any open permanent position that they could perform based on their

Page **6** of **16**

restrictions.    The  position  would  be  awarded  pursuant  to  the  CBA's  usual
procedures.

On July 12, 2011, Feeney returned to work with restrictions necessitated by
her psychological injury, specifically her post-traumatic disorder ("PTSD").    Her
restrictions at the time of her initial return to work prevented her from working
around primer, working in or near the building she was injured, working anything
but day shift, or working more than four hours a day.    Based on these restrictions,
Feeney could not return to her job as a centerfire cap operator and Olin assigned
her to a light-duty position in the Shotshell department.    While she was in that
light-duty position, Feeney's restrictions changed, and she was able to work up to
eight    hours  a  day.    During  her  time  in  the  Shotshell  department,  Feeney
continued to be paid and to accrue seniority as if she was working as a centerfire
cap operator in the Primer department.

Feeney  did  not  have  to  bid  and  be  awarded  her  temporary  light-duty
position.    Feeney  was  aware  that  she  had  a  temporary  job  created  by  Olin.
Feeney's light-duty position was created specifically for her by temporarily taking
tasks away from a number of other permanent positions.    None of those impacted
employees were in any way bumped, replaced, or displaced by Feeney during her
time in her light-duty position.    While in her light duty position, Feeney's main job
task  was  to  inspect  shotshells  after  they  left  the  header  machine.    Feeney  also
sometimes glued cardboard cartons or corrected misprinted labels by handwriting
the  correct  label.    In  addition  to  this  work  on  the  production  floor,  Feeney

occasionally performed clerical duties.

On January 12, 2012, Feeney's medical counselor, Mark Tobin, determined that Feeney had reached Maximum Medical Improvement ("MMI") and placed her on the following permanent restrictions: (a) not work in or near the building where she was injured; (b) not work with primer in any manner; (c) work day shift only; and (d) work no more than an 8-hour shift.   On March 5, 2012, Feeney underwent an independent psychiatric examination by Dr. Elizabeth Pribor.   In her March 12, 2012 report, Dr. Pribor concluded that Feeney had reached MMI (as long as she remained on her medications) and recommended the following: (a) not work in a building with the possibility of explosions and (b) not work all three shifts but could work day or evening shifts.   In Dr. Pribor's opinion, Feeney was capable of working overtime as she was before her injury.

Feeney's workers' compensation attorney, David Galanti, stated that he intentionally delayed the settlement of Feeney's workers' compensation claim based on his concerns over whether Feeney would have a permanent position. Eventually, Mr. Galanti assumed that Olin would provide Feeney's light-duty position on a permanent basis based on the amount of time she had been in the light-duty position and assumptions of what was meant by Olin's workers' compensation attorney in pre-settlement letters and the settlement agreement itself.   Mr. Galanti does not remember ever asking Olin's workers' compensation attorney if Feeney's light-duty position would be permanent and does not recall anyone from Olin telling him that her light-duty position would be permanent.

Page **8** of **16**

During the negotiations, the extent of Feeney's injuries was in dispute and it was not resolved until the workers' compensation settlement agreement was executed by all parties in June 2014. Feeney testified that she believed she would permanently remain in her light-duty position based on the amount of time she remained in the position and on a statement in the settlement agreement that she had been "reassigned to a different position."

Kimberly Murphy, Supervisor of Human Resources at Olin, reviewed Feeney's restrictions and the positions available at the East Alton facility and ultimately determined that no permanent positions were available for Feeney. After Ms. Murphy determined that Feeney would need to be put on layoff status, Ms. Murphy prepared a letter to Feeney, alerting her to her layoff status, informing her of her need to provide updated medical information to Karen Vogan at Olin's third-party medical provider, and notifying Feeney that failure to provide the paperwork could result in termination of her employment. Feeney received the layoff letter and she timely provided the requested medical update to Ms. Vogan.

The CBA's two-tiered seniority scheme, which prioritizes occupational group over plant-wide seniority, combined with Feeney's medical restrictions that prevent her from working in Primer, which is the only department in which she has occupational group seniority, make it hard for Feeney to be placed in a permanent position at Olin. Had Feeney's medical restrictions arisen from a non-work-related injury, she would not have been provided a light-duty position, and Olin would have evaluated Feeney's ability to be placed in a permanent position

upon the exhaustion of her entitlement to medical leave.   At that time, if no position was available, Feeney would have been placed on layoff-unavailable status. Employees are placed on layoff-unavailable status by Olin due to medical restrictions that prevented them from holding permanent positions that were not caused by work-related injuries and by non-work-related injuries.

No one from Olin has ever communicated to Feeney that her layoff status has ended.   No suitable, permanent positions that meet Feeney's restrictions are currently available or have been available during Feeney's time on layoff-unavailable status.

Shortly after it happened, Union business representative, Jason Tetidrick, became aware that Feeney had been placed on layoff-unavailable status.   Mr. Tetidrick sent a letter to Olin with a request for information related to other employees who had been recently laid off.   Olin responded to the Union's request for information, listing the fourteen employees to be placed on layoff-unavailable status most recently before Feeney.   Of those, only two had work-related injuries and/or workers' compensation claims.   In all of the correspondence from Olin to Feeney, from the Union to Olin, and from Olin to the Union regarding Feeney's layoff, there is no indication by Olin or the Union that Feeney's employment had been terminated.   Neither Feeney nor Mr. Tetidrick believes that Feeney's layoff violates the CBA.   Neither Feeney nor the Union filed a grievance challenging her layoff.   Feeney is not able to perform her previous job as a centerfire cap operator.

Feeney testified that Geneva Terrell, a co-worker injured on the job, worked

in a light-duty position, and was able to bid successfully into a permanent position. No Olin employees with restrictions caused by a work-related injury or a non-work-related injury were allowed to remain in a light-duty position as long as Feeney.

## Summary Judgment

Summary judgment is proper when the pleadings, discovery, and disclosures establish that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Winsley v. Cook Cnty.,* 563 F.3d 598, 602–03 (7th Cir. 2009); Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Indiana,* 259 F.3d 619, 625 (7th Cir. 2001); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor, as well as resolve all factual disputes in favor of the non-moving party. *Scott v. Harris,* 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *Fischer v. Avanade, Inc.,* 519 F.3d 393, 401 (7th Cir. 2008).

The party seeking summary judgment bears the initial burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.,* 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548). In response, the

non-moving party may not rest on bare pleadings alone, but instead must highlight specific material facts to show the existence of a genuine issue to be resolved at trial. *Insolia v. Philip Morris Inc.,* 216 F.3d 596, 598 (7th Cir.2000). The Court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *McGrath v. Gillis,* 44 F.3d 567, 569 (7th Cir. 1995).

### Analysis

Olin argues that this is a straightforward case in that it is undisputed that Feeney could not perform her original job or any other eligible job given her condition determined by her workers' compensation settlement and so she was placed on layoff status under the CBA. Therefore, Olin maintains that since Feeney has not been discharged, she does not have a cause of action for wrongful discharge. Second, Olin argues that Feeney lacks any evidence that Olin laid her off in retaliation for her workers' compensation claim. Olin contends that the evidence demonstrates that for over three years Olin provided Feeney a temporary light-duty position which it was not legally required to provide and it was a position that Feeney would not have had if her injuries had not been caused by a work-related injury.

Under Illinois law, it is unlawful for an employer to terminate an employee in retaliation for exercising a right guaranteed by the Illinois Workers' Compensation Act, 820 ILCS 305 ("IWCA"). S*ee* 820 ILCS 305/4(h) (prohibiting employers from interfering with an employee's exercise of IWCA rights or from discharge

ing employees because of the exercise of IWCA rights); *Kelsay v. Motorola,* 74 Ill.2d 172, 185, 23 Ill.Dec. 559, 384 N.E.2d 353, 358–59 (Ill.1978) (establishing a private cause of action for retaliatory discharge of an employee who files workers' compensation claim); *Hinthorn v. Rolan's of Bloomington, Inc.,* 119 Ill.2d 526, 533, 116 Ill.Dec. 694, 519 N.E.2d 909, 913 Ill.1988) (clarifying that the retaliatory discharge tort also applies to seeking medical care under IWCA, not just to the filing of Workers' Compensation claim). This is an exception to the general rule in Illinois that employers may terminate at-will employees for any or no reason. *Kelsay,* 74 Ill.2d at 181, 23 Ill.Dec. 559, 384 N.E.2d at 357.

For claims alleging retaliatory discharge for the exercise of IWCA rights, the plaintiff employee must prove (1) his status as an employee of the defendant; (2) his exercise of a right granted by IWCA, and (3) a causal relationship between his discharge and the exercise of that right. *Gordon v. FedEx Freight, Inc.,* 674 F.3d 769, 773 (7th Cir. 2012) (citing *Roger v. Yellow Freight Systems, Inc.,* 21 F.3d 146, 149 (7th Cir. 1994)); *see also Clemons v. Mechanical Devices Co.,* 184 Ill.2d 328, 336, 235 Ill.Dec. 54, 704 N.E.2d 403, 406 (Ill.1998) (stating the same three-element test for contexts where the IWCA right asserted is the right to file a Workers' Compensation claim).

Where a retaliatory discharge claim brought under Illinois law is litigated in federal court, 'the federal court must apply the standard of the state law to a motion for summary judgment, and not the federal standard.' *Gacek v. Am. Airlines, Inc.*, 614 F.3d 298, 303 (7th Cir. 2010). The Seventh Circuit has observed

that '[i]n resolving retaliatory discharge claims, Illinois does not apply the *McDonnell Douglas* burden-shifting framework commonly applied in federal retaliation cases.'; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769 774 (7th Cir. 2012) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Instead, a plaintiff attempting to show causation 'must affirmatively show that the discharge was primarily in retaliation for [her] exercise of a protected right.' *Roger v. Yellow Freight Sys., Inc.*, 21 F.3d 146, 149 (7th Cir. 1994).

Further, Olin is correct that there is no cause of action under Illinois law where no discharge has occurred. *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 39, 645 N.E.2d 877, 882 (Ill. 1994); *Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679, 683 (Ill. App. 1999); *Fisher v. Lexington Health Care, Inc.*, 188 Ill.2d 455, 467-68, 722 N.E.2d 1115, 1121 (Ill. 1999) (acknowledging that the Illinois Supreme Court has refused to recognize a cause of action for common law retaliatory constructive discharge); *Hartlein v. Ill. Power Co.*, 601 N.E.2d 720, 730 (Ill. 1992)(declining to recognize a cause of action for retaliatory constructive discharge).

Feeney's counsel argues and when viewing the evidence in the light most favorable to Feeney it seems to support the argument that Olin failed to comply with the Illinois Workers' Compensation Act with respect to offering Feeney either an accommodation or vocational rehabilitation or retraining and that if she was not going to be kept in the position she was working at the time of her settlement, the workers' compensation settlement should have had a completely different value.

Page **14** of **16**

In other words, Feeney is accusing Olin of gamesmanship, sharp practices, and even illegal practices under the Illinois Workers' Compensation Act.   However, Feeney has the burden of persuasion that Olin *retaliated* against her for pursuing her workers' compensation case and that it is missing from her argument and more importantly from her evidence in this case.   Perhaps, Feeney should have pursued a different recourse in the Illinois Workers' Compensation system to seek redress for the wrongful acts alleged by Olin.

Further, the Court finds that the evidence demonstrates that Feeney was only laid off and not terminated and that Olin did not retaliate against her for pursuing her workers' compensation case.   The record reveals that Olin provided Feeney with a temporary light-duty position for over three years. Feeney admits that her restrictions prevented her from returning to her previous position and that no permanent position was ever available to her based on her seniority and restrictions.   Moreover, the CBA provides Feeeny, a union employee, recall rights for two years following her placement on layoff status in August 2014.   Moreover, Feeney does not dispute that she provided the necessary medical paperwork to perfect her layoff rights nor does she contradict the record with evidence that she continues to enjoy the following rights under the CBA: to bid on open positions, to be recalled under the CBA, and/or to file a grievance if the CBA is not followed. Feeney admits that no one from Olin told her she was discharged or that her layoff has ended.   Thus, the Court finds that a violation of the Illinois Workers' Compensation Act regarding accommodation, vocational rehabilitation or

Page **15** of **16**

retraining as argued by plaintiff does not equate to retaliation. Accordingly, Feeney cannot establish a claim of retaliatory discharge under the Illinois Workers' Compensation Act and her case does not survive summary judgment.

### Conclusion

Accordingly, the Court **GRANTS** Olin Corporation's motion for summary judgment (Doc. 27). The Court finds in favor of defendant Olin Corporation and against plaintiff Kimberly J. Fenney on Counts I and II of the complaint. Further, the Court **DENIES** as moot plaintiff's motion for oral argument (Doc. 44) and plaintiff's appeal of magistrate judge decision (Doc. 45).[3] The Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same.

**IT IS SO ORDERED.**

Signed this 16th day of March, 2016.

Digitally signed by
Judge David R.
Herndon
Date: 2016.03.16
13:37:25 -05'00'

**United States District Court**

---

3 The Court affirms the decision of Magistrate Judge Wilkerson's December 29, 2015 Order denying Feeney's motion for extension of time (Doc. 42) as the Court does not need an expert on the Illinois Workers' Compensation Claim and the expert's testimony would not help Feeney in this case.